IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., | ) |
| Plaintiff, | ) No. 3:13-cv-0180 |
| v. | ) Chief Judge Haynes |
| SCHRADER ELECTRONICS, LTD., | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Nissan North America, Inc., a California corporation with its principal place of business in Tennessee, filed this action originally in the Chancery Court for Rutherford County, Tennessee against the Defendant, Schrader Electronics, Ltd., a citizen of Northern Ireland, United Kingdom. Schrader removed the action to this Court under the diversity jurisdiction statute, 28 U. S. C. § 1332, as a citizen of the United Kingdom. Nissan did not object to the removal.

In its complaint, Nissan asserts claims for breach of contract and unjust enrichment arising out of Nissan's successful defense of a patent infringement action in which Schrader's products that were sold to Nissan, were identified as the infringing goods. In sum, Nissan alleges that under the parties' Master Sales Agreement, Schrader agreed to defend, indemnify and hold Nissan harmless, for any attorney fees, costs, and expenses incurred in the defense of any legal action alleging that any part or component of a Schrader part sold to Nissan, infringed another person's intellectual property rights. Nissan alleges that despite its initial demand for a defense of the infringement action and its additional demands, Schrader refused to defend or later to indemnify Nissan for its attorney fees, costs and expenses incurred in that patent litigation. Schrader's refusal continued after Nissan's

1

successful defense of the patent action.

Before the Court is Schrader's motion to dismiss (Docket Entry No. 22) contending, in sum, that Nissan's breach of contract and unjust enrichment claims are untimely under Tenn. Code. Ann. § 47-2-725, the governing Tennessee statute of limitation for the sales of goods, because those claims accrued on October 8, 2007 when Nissan demanded indemnification for costs in the patent infringement action. Because this action was filed on February 5, 2013, more than four years from that demand, Nissan's claims are time barred as a matter of law.

In its response, Nissan contends that Schrader's breach of its agreement to indemnify Nissan did accrue until 2011, the year of the entry of the final judgment in the patent infringement action and that Nissan's common law unjust enrichment claim is timely under Tennessee's statute of limitation for such claims. (Docket Entry No. 31). Alternatively, Nissan argues that a separate claim accrued each time Nissan incurred attorney fees and/or expenses in the patent infringement action.

For the reasons set forth below, the Court concludes that Nissan's breach of contract claim is a claim for indemnification. Under Tennessee law, such claims do not accrue until the end of the pertinent litigation and the governing statute of limitations for such claims is the six year period in Tenn. Code Ann. § 28-3-109(a)(3). Thus, the Court concludes that Nissan's action is timely filed.

### A. Analysis of the Complaint

#### 1. The Parties' Master Agreement

Nissan designs, manufactures, assembles, sells and distributes motor vehicles and motor vehicle parts or components and on November 28, 2005, Nissan executed an agreement with Schrader, entitled "Master Purchase Agreement" for Nissan's procurement of motor vehicle

components from Schrader under defined terms and conditions. (Docket Entry No.1-1, Nissan's Complaint at ¶ 10, 11)[1]. Schrader designs, manufactures and sells vehicle components, "including TPMS components and parts." Id. at ¶ 4. According to the Master Purchase Agreement, the parties agreed that the laws of the state of Tennessee would govern the agreement and all purchase orders. Id. at 35, Article 35.

As to intellectual property litigation arising from the purchase of Schrader's parts or any component thereof, Section 16.1 of the Master Purchase Agreement states, in relevant part:

> Supplier [Schrader] shall defend, indemnify and hold harmless Nissan [NNA] and its dealers, its Affiliates and their dealers, and their respective officers, directors and employees, in full against all loss, liability, damages, costs and expenses, including attorney fees and expert fees, arising from any claims, actions or lawsuits, alleging infringement of any Intellectual Property Rights in connection with the Parts alone or in combination with any other parts or components, or their manufacture . . . .

Id. at 22. The Master Purchase Agreement's definition of "Intellectual Property Rights" includes "any patent." Id. at 21-22.

This provision of the Master Purchase Agreement also applies to any Nissan "Affiliate" that the Master Purchase Agreement defines as:

> an entity that:
> (i) is controlled directly or indirectly by;
> (ii) controls directly or indirectly; or
> (iii) is under common ownership of Nissan or Supplier, as the case may be. "Control" for this purpose shall mean having a fifty percent (50%) or greater interest in the issued share capital

---

[1] Although portions of the Master Purchase Agreement are quoted and cited in Nissan's complaint, the entire agreement is attached to Nissan's complaint and Schrader's motion to dismiss. (Docket Entry Nos. 1-1 and 22-1). The Court may consider documents attached to and referenced in the pleadings without converting the motion to dismiss into a motion for summary judgment. See Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008); Weaver v. Prudential Ins. Co. of America, 763 F. Supp.2d 930, 938 (M.D. Tenn. 2010).

of the other entity.

Id. at 11.

## 2. The Patent Litigation

On July 13, 2007, MHL TEK, LLC ("MHL"), filed a patent infringement action, <u>MHL TEK, LLC v. Nissan Motor Co., et al.</u>, Case No 2:07-cv-00289, in the United States District Court for the Eastern District of Texas. Id. at ¶ 16. MHL named Nissan as well as Nissan Motor Co. ("NMC") and Nissan Technical Center North America, Inc. ("NTCNA"), Nissan affiliates, as defendants. Id. at ¶¶ 17, 19. NMC remains a Nissan affiliate, but since the filing of the MHL patent action, NTCNA merged into Nissan. Id. at ¶¶ 19, 20. In the patent action, MHL sought damages, treble damages, attorney's fees and costs from Nissan, as well as injunctive relief for infringement of three of its patents. Id. at ¶ 28.

MHL's patent infringement claims identified MHL's U.S. Patent No. 5,663,496 entitled "Tire Monitoring Via an Electromagnetic Path Including the Ground Plane of a Vehicle" (the "496 Patent"), U.S. Patent No. 5,731,516 entitled "System and Method for Monitoring a Pneumatic Tire" (the "516 Patent"), and U.S. Patent No. 5,741,966 entitled "Method and System for Monitoring a Parameter of a Vehicle Tire" (the "966 Patent"). Id. at ¶ 23. According to MHL's complaint, the Nissan defendants infringed MHL's '496 Patent, the '516 Patent and the '966 Patent in connection with parts that Schrader supplied to Nissan under the Master Purchase Agreement. Id. at ¶ 24. MHL specifically alleged that "the accused Nissan vehicles use TPMS sensor modules manufactured by Schrader." Id. at ¶ 25. MHL also alleged that multiple claim elements in each of these patents were in the Schrader-supplied components. Id. at ¶ 26. Nissan alleges that in its Order dismissing the action, the District Judge referred to Nissan and other defendants as the "Schrader/TRW

4

Defendants". Id. at ¶ 27.

On October 8, 2007, Nissan demanded that Schrader assume Nissan's defense of the MHL patent action or pay Nissan's costs. Id. at ¶¶ 29, 30. Nissan's representative made that demand under the Master Purchase Agreement at a meeting attended by Carl Wacker, Schrader's Vice President of Sales and Marketing, Rich Huber, Schrader's North American Business Development Manager, and Jerry Mahurin, in-house counsel for Tomkins PLC, Schrader's corporate parent, and Gates Corporation, a Schrader affiliate. Id. Schrader denied any responsibility for defense of the patent action and refused to assume its defense or pay Nissan's defense costs. Id. at ¶ 30.

With Schrader's refusal, Nissan assumed the defense of the MHL action and incurred in excess of $3.7 million in attorney fees, costs and expenses in its successful defense. Id. at ¶¶ 31, 34. Nissan also alleges that on several occasions since the October 8, 2007, meeting, Nissan reiterated its demand under the Master Purchase Agreement for Schrader's assumption of the defense of the MHL patent infringement action or payment of Nissan's defense costs, but Schrader refused. Id. at ¶ 32. Nissan filed this action in state court on February 5, 2013. (Docket Entry No. 1-1 at 1).

## B. Conclusions of Law

To survive a motion to dismiss, Nissan's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (citation omitted). In a word, Nissan's complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In sum, Twobley "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" tending to prove the allegations. Id. at 556. For such a motion, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept

5

all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Com'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted), but the Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." (citations and quotation marks omitted).

In Iqbal, the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. Rule Civ. Proc. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "makes assertion[s]" devoid of "further factual enhancement." Id. at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. **First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. at 555. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556.** Determining whether a complaint states a plausible
>
> claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d. Cir. 2007). But where the well-pleaded

6

> facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not "show[n]", "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

556 U.S. at 677-79 (emphasis added).

Under the Master Agreement, the parties agreed that Tennessee law would govern the agreement and related purchase orders. (Docket Entry No. 1-1 at 35, Article 35). From the Court's research, there is not an express Tennessee statute of limitation for indemnification claims. Schrader contends that Nissan's breach of contract claims involve the sale of goods and Tennessee adopted the Uniform Commercial Code. Under that Code, any Nissan action invovling Schrader's sales of goods must be filed within four (4) years after the claim accrued. Tenn. Code. Ann. § 47-2-725(1). Schrader cites, inter alia, Baptist Memorial Hosp. v. Argo Constr. Corp., 308 S.W. 3d 337, 339 (Tenn. App. 2009) that under the UCC, a claim for breach of a contract for the sale of goods accrues when the breach occurs. Tenn. Code. Ann. § 47-2-725(2). Because Nissan alleges that Schrader breached the Master Agreement on October 8, 2007, when Schrader refused to defend or to pay defense costs in the MHL patent action, Schrader argues that the breach occurred on October 8, 2007. Because Nissan filed this action on February 5, 2013 and this action is time barred as a matter of Tennessee law. In sum, Nissan argues that its claims did not accrue under Tennessee law until the MHL patent action ended in 2011 or alternatively, each time Nissan incurred an expense or cost in MHL's patent litigation.

In Tennessee, the applicable statute of limitations is determined by the gravamen of the

7

complaint rather than a plaintiff's designation of a claim. Pera v. Kroger, 674 S.W.2d. 715, 719 (Tenn.1984). Given that Nissan's contract with Schrader includes an express indemnification provision for patent litigation, the Court considers Tennessee law governing indemnification claims. In Travelers Insurance Co. v. Fidelity & Cas. Co.of New York, 219 Tenn. 244, 252, 409 S.W.2d 175, 179 (1966), plaintiff, asserted an indemnification claim after payment of worker compensation benefits to a subcontractor's employee. The Travelers plaintiff filed the action after the subcontractor's insurer refused its demand for payment of the worker compensation benefits. Id. at 176-77. The subcontractor's insurer argued that the plaintiff's claim was time barred by the one year statute of limitations for subrogation claims under the Workermen's Compensation Act. Id. at 177. The Tennessee Supreme Court held that "we think that the declaration alleges **a cause of action for indemnity** or contribution against Fidelity. Consequently, **we are of the opinion that** the statute of limitation of one year relied upon by Fidelity does not apply; but that **our statute of limitation of six years, as insisted by Travelers, does apply.**" Id. at 178.(emphasis added). See also Indiana Lumbermens Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 511 S.W.2d 713, 714 (Tenn. Ct. App. 1972) ("the Chancellor further held that the one-year tort statute of limitation relied upon by State Farm Mutual was not applicable to the case at bar because Indiana Lumbermens Mutual's claim was one for indemnity and not one for subrogation and that the six-year statute of limitations governed the case . . . . .[t]his Court also affirms the finding of His Honor the Chancellor that complainant's suit is one of indemnity and not one of subrogation") (citations omitted). Tennessee has a six year limitation period for "Actions on contracts not otherwise expressly provided for." Tenn. Code Ann. § 28-3-109(a)(3).

Although those decisions involved insurance contracts, Nissan's agreement with Schrader

8

for indemnification is the functional equivalent of an insurance contract for intellectual property litigation involving a Schrader part. In any event, the Tennessee Supreme Court observed that "[o]ur interpretation of insurance contracts, such as the CGL in this case, is governed by the same rules of construction used to interpret other contracts." Travelers Indem. Co. of America v. Moore & Associates, Inc., 216 S.W.3d 302, 305 (Tenn. 2007). Tennessee law recognizes a distinction between the contractual duty to defend and the duty to indemnify. "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." Id. at 305 (citing St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn.1994)). As in Travelers, where the Tennessee Supreme Court referred to "indemnification or contribution" claims, 409 S.W.2d at 177, the Tennessee Court of Appeals discussed indemnity as comparable to a contribution claim and stated that such claims arise upon "satisfaction of judgment." Security Fire Protection Co. v. City of Ripley, 608 S.W.2d 874, 876-77, 878 (Tenn. Ct. App. 1980).

Because the duty to indemnify requires a decision on the factual merits of the claims, federal courts in declaratory judgment actions have declined to rule on the duty of indemnification issue until the conclusion of the underlying actions. See Trice, Geary & Myers, LLC v. CAMICO Mut., Ins. Co. Civil No. WDQ–09–2754, 2013 WL 680478 at * 3 (D. Md., Feb. 22, 2013) ("a declaration as to CAMICO's duty to indemnify would be 'premature,' and 'should instead be made after the underlying actions are resolved.'") and Nationwide Mut. Fire Ins. Co. v. McNulty, No.Civ.A. 96–7304, 1997 WL 805165 at *5 (E. D. Pa. Dec. 30, 1997) ("As already noted the duty-to-defend issue can be resolved with reference only to the pleadings and the insurance policy. **The indemnification issue, by contrast, requires the resolution of the merits of the underlying**

**dispute. To grant the summary judgment motion of either the plaintiff or the defendants would require resolution of the issue of whether McNulty committed a negligent act. Such a determination would be inappropriate in a declaratory judgment action at this time.** Resolution of those issues by summary judgment in the instant action carries with it the potential for prejudicial collateral estoppel in the underlying action. Furthermore, denial of both motions would result in a federal trial of the exact issues that are pending in the state proceeding. Hence, considerations of the relationship between state and federal courts, as well as considerations of efficiency, strongly counsel against resolution of this issue.") (emphasis added).

Applying these principles of Tennessee law here, the Court concludes that Nissan's breach of contract claim based upon the Master Purchase Agreement is an indemnification claims governed by Tennessee's six years statute of limitation Tenn. Code Ann. § 28-3-109 (a)(3). Although Schrader asserts that Nissan's claim accrued on October 7, 2008 when Scharder refused to assume the defense of the MHL patent litigation or to pay Nissan's defense in that action, any alleged breach of its contractual duty to defend occurred on October 7, 2008. But Schrader's breach of its duty to indemnify Nissan did not accrue until the MHL patent infringement action was resolved by the Fifth Circuit on August 11, 2011.[2] At that point, Nissan's costs in attorney fees, litigation costs and expenses in the MHL patent litigation matured or ripened into a defined amount. Moreover, Nissan's defense costs were principally for services for which the applicable statute of limitation for other breach of contract claims is six years.

---

[2] MHL TEK, LLC v. Nissan Motor Co., 655 F.3d 1266 (5th Cir. 2011) thatwas decided on August 10, 2011 There may be an additional ninety days for the time period that MHL could apply for the writ of certiorari with the United States Supreme Court., but there is not any reported petition for Supreme Court review.

10

Schrader relies on Tenn. Code Ann. § 47-2-725 that provides a four year statute of limitations for claims involving the sales of goods. Under Section 47-2-275, "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Tenn. Code Ann. § 47-2-725(2). The Court also notes that Section 47-2-725(4) explains that "[t]his section does not alter the law or tolling of the statute of limitations . . . ." Tennessee's common law rule on indemnification claims is that such claims involving litigation arise not when the plaintiff is aware of the refusal to defend or pay, but arises upon payment or satisfaction of the underlying litigation. This common law rule is in the nature of a tolling rule because the injured party is aware of the breach of the duty to indemnify once the litigation commences. In this instance, because Tennessee law recognizes that indemnity claims arise upon judgment in the related litigation, the Court concludes that Tennessee's common law rule is in the nature of a tolling doctrine that Section 47-2-725 was not intended to extinguish. This conclusion is consistent with Travelers where there was a separate statute of limitation in the Workmen's Compensation Act, but the Tennessee Supreme designed the six year statute of limitation to govern the indemnification claim. Finally, the Court does not consider Baptist Memorial Hosp. v. Argo Construction Corp., 308 S.W.3d 337 (Tenn. Ct. App. 2009) to resolve the issue presented here because there, the parties agreed to shortened the limitation period.

Moreover, the Court's research reveals that courts have addressed this issue of the UCC statute of limitation for sales of goods covered by the UCC versus the common law limitation period for indemnification claims. In a word, courts are divided on whether this UCC statute applies to indemnification claims for the sales of goods otherwise covered by the UCC. See Electric Ins. Co. v. Freudenberg-Nok, General Partnership, 487 F. Supp. 2d 894, 897-900 (W. D. Ky. 2007) (analyzing the conflicting decisions, adopting the majority view and applying Kentucky common law

11

limitation period, not the Kentucky UCC version of Section 47-2-725.) "In sum, the court finds that the majority rule is more theoretically sound than the minority rule and also more consistent with Kentucky jurisprudence. It therefore holds that K.R.S. § 355.2–725 is inapplicable to the plaintiff's claims for indemnity." Id. at 900. This Court also joins the majority rule and concludes that Tenn. Code Ann. 47-2-275 does not control Nissan's indemnification claim.

As to Nissan's unjust enrichment claim, under Tennessee law, "[a]ctions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966). "Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto." Id. From the Court's research, Tennessee does not provide an express statute of limitations for unjust enrichment claims. Federal courts have applied the federal six year limitation to an unjust enrichment claim. Federal Deposit Ins. Corp. v. Bank One, Waukesha, 881 F.2d 390, 391-95 (7th Cir 1989). A state court has held that as unjust enrichment is equitable remedy, a court may elect not to apply a statute of limitation that governs actions at law for damages. Dunham v. Dunham, 528. A.2d 1123, 1135 (Conn. 1987). As a matter of equity, this Court deems Nissan's unjust enrichment claim timely, given the timeliness of its indemnification claim.

For these reasons, the Court concludes that Defendant's motion to dismiss should be denied.

An appropriate Order is filed herewith.

ENTERED this the _18th_ day of July, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court