UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NISSAN NORTH AMERICA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13-CV-180 |
| | ) | Judge Haynes |
| | ) | |
| SCHRADER ELECTRONICS, LED, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff, Nissan North America, Inc., a California corporation with its principal place of business in Tennessee, originally filed this action in the Chancery Court for Rutherford County, Tennessee against the Defendant Schrader Electronics, Ltd., a citizen of Northern Ireland, United Kingdom. Schrader removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, as a citizen of the United Kingdom. Nissan did not object to the removal.

Nissan asserts claims for breach of contract and unjust enrichment arising out of Schrader's refusal to indemnify Nissan for attorney fees and expenses incurred in Nissan's defense of a patent infringement action involving Schrader's products, that were sold to and used by Nissan's vehicles. Schrader's parts, were identified as the infringing goods. In sum, Nissan alleges that under the parties' Master Purchase Agreement ("MPA"), Schrader agreed to defend, indemnify and hold Nissan harmless for any attorney fees, costs, and expenses incurred in the defense of any legal action alleging that a Schrader part sold to Nissan, used alone or in combination with any other parts or components, infringed violated another entity's intellectual

property rights. Nissan alleges that despite its demands for a defense of the infringement action, Schrader refused to defend, or later to indemnify Nissan for its attorney fees, costs and expenses incurred in the patent action. Schrader's refusal continued after Nissan's successful defense of the patent action.

Before the Court are Nissan's motion for summary judgment (Docket Entry No. 61) and Schrader's cross motion for summary judgment (Docket Entry No. 63). In its motion, Nissan asserts that Schrader owed a contractual duty to indemnify Nissan for the expenses incurred in the patent infringement action and seeks damages of approximately $3.7 million based upon Nissan's expenditures for attorneys' fees and other expenses in defense of the patent infringement action. In its motion, Schrader contends that the patent infringement litigation falls within an exception to its indemnification obligation in the parties' MPS or alternatively, that if indemnification is owed, material factual disputes exist on the reasonableness of Nissan's damages claim.

For the reasons set forth below, the Court concludes that Nissan's motion for summary judgment should be granted, in part and Schrader's motion for summary judgment should be denied. In a word, the Court concludes that Schrader owed a legal duty to indemnify Nissan for the infringement action defense, but material factual disputes exist on the amount of Nissan's damages for Schrader's breach of contract.

## I. FINDINGS OF FACT[1]

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for

2

## 1. The Parties' Master Purchase Agreement

Nissan designs, manufactures, assembles, sells and distributes motor vehicles and motor vehicle parts or components. Schrader designs, manufactures and sells vehicle components. On November 28, 2005, Nissan and Schrader executed a contract entitled "Master Purchase Agreement" ("MPA") governing Nissan's procurement from Schrader sensors used to monitor pressure in tires under defined terms and conditions. (Docket Entry No. 60-1 at ¶ 10, 11). According to the MPA, Tennessee laws would govern the agreement and all purchase orders. Id. at 35, Article 35.

As to any intellectual property litigation arising from the purchase of Schrader's parts or any component thereof, Section 16.1 of the MPA provides, in relevant part:

> Supplier [Schrader] shall defend, indemnify and hold harmless Nissan and its dealers, its Affiliates and their dealers, and their respective officers, directors and employees, in full against all loss, liability, damages, costs and expenses, including attorney fees and expert fees, arising from any claims, actions or lawsuits, alleging infringement of any Intellectual Property Rights in connection with the Parts alone or in combination with any other parts or components, or their manufacture; provided, however, the foregoing shall not apply where the alleged Infringement is based upon Nissan [sic] its dealers, and Affiliates use of such Parts alone or in combination with any other parts or components in a manner not reasonably foreseeable by Supplier and unless such alleged or actual infringement is caused by the Supplier following the Nissan Drawings, the Acceptance Drawings and/or the Specifications after a reasonable patent search by Supplier.

Id. at 22. The MPA's definition of "Intellectual Property Rights" includes "any patent." Id. at 21--22.

---

directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56.

This provision of the MPA also applies to any Nissan "Affiliate" that the MPA defines as:

> an entity that:
>
> (I) is controlled directly or indirectly by;
>
> (ii) controls directly or indirectly; or
>
> (iii) is under common ownership of Nissan or Supplier, as the case may be. "Control" for this purpose shall mean having a fifty percent (50%) or greater interest in the issued share capital of the other entity.

Id. at 11.

### 2. The Patent Litigation

On July 13, 2007, MHL Tek, LLC ("MHL Tek"), filed a patent infringement action ("MHL Tek Litigation"), MHL Tek,. LLC v. Nissan Motor Co., et al., Case No 2:07–CV–289, in the United States District Court for the Eastern District of Texas. Id. at ¶ 16. MHL Tek named Nissan as well as Nissan Motor Company and Nissan Technical Center North America, Inc., both Nissan affiliates, as defendants. Id. at ¶¶ 17, 19. Nissan Motor Company remains a Nissan affiliate, but since the filing of the MHL Tek Litigation, Nissan Technical Center North America, Inc. merged into Nissan. Id. at ¶¶ 19, 20. In the patent action, MHL Tek sought damages, treble damages, attorney's fees and costs from Nissan, as well as injunctive relief for infringement of three of its patents. Id. at ¶ 28.

MHL Tek's patent infringement claims were based upon the following patents: MHL Tek's U.S. Patent No. 5,663,496 entitled "Tire Monitoring Via an Electromagnetic Path Including the Ground Plane of a Vehicle" (the "496 Patent"), U.S. Patent No. 5,731, 516 entitled "System and Method for Monitoring a Pneumatic Tire" (the "516 Patent"), and U.S. Patent No. 5,741,966

4

entitled "Method and System for Monitoring a Parameter of a Vehicle Tire" (the "966 Patent"). Id. at ¶ 23. According to MHL Tek's complaint, the Nissan defendants infringed MHL Tek's '496 Patent, the '516 Patent and the '966 Patent in connection with parts that Schrader supplied to Nissan under the MPA. Id. at ¶ 24. MHL Tek specifically alleged that "the accused Nissan vehicles use TPMS [Tire Pressure Monitoring System] sensor modules manufactured by Schrader." Id. at ¶ 25. MHL Tek also alleged that multiple claim elements in each of these patents were in the Schrader-supplied components. Id. at ¶ 26. Nissan cites the Order dismissing MHL Tek's action, referring to Nissan and other defendants as the "Schrader/TRW Defendants." Id. at ¶ 27.

On October 8, 2007, Nissan demanded that Schrader assume Nissan's defense of the MHL Tek Litigation or pay Nissan's costs. Id. at ¶¶ 29, 30. Nissan's representative made that demand under the MPA at a meeting attended by Carl Wacker, Schrader's Vice President of Sales and Marketing, Rich Huber, Schrader's North American Business Development Manager, and Jerry Mahurin, in-house counsel for Tomkins PLC, Schrader's corporate parent, and Gates Corporation, a Schrader affiliate. Id. Schrader denied any responsibility for defense of the patent action and refused to assume its defense or pay Nissan's defense costs. Id. at ¶ 30.

With Schrader's refusal, Nissan assumed the defense of the MHL Tek Litigation and incurred over $3.7 million in attorney fees, costs and expenses in its successful defense. Id. at ¶¶ 31, 34. Nissan asserts that on several occasions since the October 8, 2007, meeting, Nissan reiterated its demand under the MPA for Schrader's assumption of the defense of the MHL Tek Litigation or payment of Nissan's defense costs, but Schrader refused. Id. at ¶ 32. Nissan filed

this action in state court on February 5, 2013. (Docket Entry No. 1-1 at 1). Schrader removed the action to this Court on March 1, 2013.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

6

Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the

nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby, 477 U.S. at 251-52).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would</u>

apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts

9

by citing specific page numbers. Designate means simply "to point out the
location of." Webster's Third New international Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough
> specificity that the district court can readily identify the facts upon which the
> nonmoving party relies; but that need for specificity must be balanced against a
> party's need to be fairly apprised of how much specificity the district court
> requires. This notice can be adequately accomplished through a local court rule or
> a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations and footnotes omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The MPA is governed by Tennessee law. (Docket Entry No. 1-1 at 35, MPA at Art. 35.) Under Tennessee law, "[w]hen resolving disputes concerning contract interpretation, [a court's] task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn.1999).

11

Under Article 16.1 of the MPA, Schrader is obligated to indemnify Nissan and its Affiliates "against all loss, liability, damages, costs and all expenses, including attorney fees and expert fees, arising from any claims, actions or lawsuits, alleging infringement of any Intellectual Property Rights in connection with the Parts alone or in combination with any other parts or components, or their manufacture. . . ." The Court concludes that under the terms of the MPA, MHL Tek's action involved the Nissan's and its affiliates's alleged infringement of MHL Tek's "intellectual Property Rights" by the use of Schrader's parts "in connection with the Parts alone or in combination with any other parts or components"

The "carve-out" exception in the MPA cited by Schrader to relieve Schrader of this duty to defend and indemnify Nissan applies:

> . . .where the alleged Infringement is based upon Nissan [] its dealers, and Affiliates use of such Parts alone or in combination with any other parts or components in a manner not reasonably foreseeable by Supplier and unless such alleged or actual infringement is caused by the Supplier following the Nissan Drawings, the Acceptance Drawings and/or the Specifications after a reasonable patent search by Supplier.

This carve-out has two requirements: (1) the alleged infringement must be based on Nissan's use of Schrader's sensors in a manner not reasonably foreseeable to Schrader, *and* (2) the alleged or actual infringement must be caused by Schrader's following the Nissan Drawings, the Acceptance Drawings, and/or the Specifications after a reasonable patent search by Schrader. *Both* requirements must be met before Schrader is relieved of its obligation to indemnify Nissan.

As to the first requirement, Nissan used Schrader's sensor in a manner that was reasonably foreseeable to Schrader and used the sensor *precisely* as Schrader understood it would be used. Schrader, in fact, designed the sensor to meet Nissan's specifications for use in the tire

12

pressure monitoring system. (Docket Entry 97, Exhibit 2, Wacker deposition at 120, 123-124). The Court concludes the first requirement for the carve-out exception is not met.

Schrader argues that the phrase "alleged Infringement" in the carve-out is not satisfied if the Plaintiffs' *allegations* in the underlying patent action were not reasonably foreseeable to Schrader, not if the *actual use* by Nissan was not reasonably foreseeable.[2] The Court disagrees. The word "alleged" in the phrase "alleged Infringement" controls and Schrader was obligated not only to defend and indemnify for legal expenses caused by an *actual* Infringement, but also to indemnify Nissan for legal expenses caused by an *alleged* infringement, unless Nissan used Schrader's sensor in a manner that Schrader did not reasonably foresee.

Schrader next argues that unless its interpretation of the carve-out provision is accepted, there is not any real-world set of facts that would satisfy this carve-out provision. In deposition, Schrader's counsel asked Nissan's Senior Counsel Steven Roberts to give an example of a use to which Nissan could put Schrader's sensors that would not be reasonably foreseeable to Schrader. Mr. Roberts responded that although it was a "bizarre example," if Nissan put Schrader's sensors in a stereo system, that would be a use that would not be reasonably foreseeable to Schrader. Yet, if Schrader were correct that there are not any realistic, real-world uses to which Nissan would put Schrader's sensor that would not be reasonably foreseeable to Schrader, that contention does not alter the meaning of this contractual language. "In the absence of fraud or mistake, courts should construe contracts as written. . . . The courts may not make a new contract for parties who

---

[2]The parties agree that the allegations raised by the MHL Tek plaintiffs were unforeseeable. MHL Tek alleged that Schrader's sensors infringed on their patent because they were a certain shape (which they were not) and that they transmitted data in a certain way (which they did not). Indeed, as Nissan notes, it was not even Nissan's *use* of the sensors that MHL Tek misunderstood, but instead it misunderstood the sensors' design and manner of transmission.

13

have spoken for themselves, and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise." Marshall v. Jackson & Jones Oils, Inc., 20 S.W.3d 678, 681–82 (Tenn. Ct. App. 1999) (citations omitted). Schrader and Nissan negotiated for an indemnification clause that protected Nissan from patent claims related to its use of Schrader's sensor in any situation in which Nissan used the sensor.[3]

Schrader next argues that its interpretation of the carve-out exception provides the better allocation of risks between the parties, because Nissan combined its sensor with other components to create an overall system, and only Nissan had full appreciation for how the disparate parts would integrate and how the system would work as a whole. To buttress its argument, Schrader cites the Uniform Commercial Code:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Tenn. Code Ann. § 47-2-312(3). This provision, however, applies only to transactions in which the parties have not "otherwise agreed" to the allocation of risks. Here, Schrader and Nissan agreed to a different allocation of risks in the MPA than provided in the UCC.

Schrader further argues that "logic, the equities, and the MPA all dictate certain divisions of responsibility for a system designer versus a component part supplies." (Docket Entry No. 59

---

[3] In addition, the Court agrees with Nissan that it is not likely that the parties intended for Nissan to allow potential intellectual property plaintiffs to determine whether Schrader owed it a duty to defend and indemnify, as neither party has any control over the allegations a plaintiff might make. A review of MHL Tek's First Amended Complaint reveals that it sued twenty-one defendants and made identical allegations against each one of them and, as stated, claimed that Schrader's sensor was shaped and operated in ways it was not, clearly not having conducted much investigation as to the validity of its claims.

at 8, Schrader's Memorandum.). As for Schrader's argument that considerations other than the language of the MPA should cause this Court to rule in its favor on liability, when the language in a contract is "clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." Planters Gin Co. v. Fed. Cimipress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). The Court concludes the language of the MPA on this issue is clear and unambiguous. Moreover, the allocation of liability that the parties here bargained for in the MPA, is not contrary to logic, the equities, or public policy. Id. ("In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy.") (citing 17 Am.Jur.2d, Contracts, § 245). Thus, the Court concludes that Schrader is responsible for indemnifying Nissan for its legal expenses incurred in defense of the MHL Tek litigation.

The parties also dispute the proper standard for determining the amount of legal expenses for which Schrader must indemnify Nissan. The parties agree that the legal expenses must be reasonable. "To be recoverable as damages, fees and expenses incurred in prior litigation with a third party must have been reasonably incurred." 22 Am. Jur. 2d Damages § 452. Nissan argues that the "lodestar" approach that determines a reasonable hourly rate and compensable hours, is the proper method for determining the amount of reasonable attorney fees. Schrader counters that because Nissan's damages are based on the MPA, Tennessee law controls the interpretation of the attorney fee provision in the MPA. Under Tennessee law, courts consider attorney time and rates as only two of many factors to be considered in determining a reasonable fee. Nissan contends that Tennessee law is not the correct standard for this court to apply in determining the

reasonableness of attorneys' fees and expenses in a patent case litigated in Texas federal court. Nissan urges the court to apply the lodestar method, the federal standard for patent infringement and federal question actions.

In the Court's view, the location and nature of the underlying litigation is irrelevant. Nissan seeks attorneys' fees and legal expenses for Schrader's breach of the MPA, and the MPA is governed by Tennessee law. Thus, Tennessee law determines the method for calculating attorneys' fees. The Tennessee Supreme Court has held that "[r]elying on the lodestar calculation alone to determine a reasonable attorney's fee is problematic." Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 180 (Tenn. 2011) (relying on ten factors in Rule of Professional Conduct 1.5). In addition, Tennessee courts have held that "[u]nreasonably duplicative, unnecessary, or excessive services should never be considered in determining a reasonable attorneys' fee." Alexander v. Inman, 903 S.W.2d 686, 702 (Tenn. Ct. App. 1995).

Given the parties' dispute about the reasonableness of the fees and whether these fees were "unreasonably duplicative, unnecessary, or excessive," the next issue is whether the Court or a jury decides those disputes. Where jurisdiction rests upon diversity of citizenship, federal law determines the right to a jury trial in federal court. Simler v. Conner, 372 U.S. 221, 222 (1963) (per curiam). Absent Sixth Circuit precedent, the Court is persuaded by the Tenth Circuit's reasoning in J.R. Simplot v. Chevron Pipeline Co., 563 F.3d 1102, 1115 (10th Cir. 2009), on whether a party has a Seventh Amendment right to a jury trial to determine the amount of costs and attorneys' fees incurred in defending itself in litigation with a third-party as damages for a breach of contract claim against the party contractually obligated to indemnify it for those expenses.

As stated in J.R. Simplot, "[t]he Supreme Court has not specifically addressed a case where previously incurred attorneys' fees are sought as the measure of compensatory damages in a breach of contract suit, [as opposed to] cases in which attorneys' fees are allowable to the prevailing party." J.R. Simplot, 563 F.3d at 1115. Here, as in J.R. Simplot, Nissan's "attorneys' fees and costs are themselves part of the merits of [the] contract claim." Id.

> The Seventh Amendment protects [the right to a jury trial] "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. XII. "The Supreme Court has held that "the phrase 'Suits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.' " Teamsters, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990) (emphasis and alterations in original). The nature of the issues presented and the remedies sought determines whether an action qualifies as "legal." Id. at 565. The general rule is that monetary relief is legal. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 710 (1999). An ordinary breach of contract claim is no different. This action is, at bottom, a legal action for compensatory damages resulting from a breach of contract. That the measure of damages happens to be attorneys' fees does not in and of itself change the nature of Simplot's claim.

Id. at 1115–16 (some citations omitted).

The Court adopts the Tenth Circuit's reasoning in J.R. Simplot to conclude that a Seventh Amendment right to a jury trial exists on the amount of attorneys' fees to which Nissan is entitled for Schrader's breach of its duty to defend and indemnify Nissan in the MHL Tek Litigation. Id. at 1117 (distinguishing cases holding that a judge, not a jury, should determine attorneys' fees due to a prevailing party from the case at bar which involved "fees incurred in a *separate litigation against a third party*") (citation omitted, emphasis in original); see also, Timken Alcor Aerospace Techs., Inc. v. Alcor Engine Co., No. 1:06-CV-2539, 2010 WL 2650026 at *3 (N.D.

Ohio July 2, 2010) ("At its heart, this is a legal action for compensatory damages, and a jury trial is required to determine the reasonableness of the fees and costs.").

Although the Court concludes that Nissan has a right to a jury trial on the damages portion of its breach of contract claim, that right is subject to the doctrine governing summary judgment motions. "The law is well-settled that summary judgment does not violate the Seventh Amendment." J.R. Simplot, 563 F.3d at 1117 (citing Fidelity & Deposit Co. v. United States, 187 U.S. 315, 319–21 (1902)). Thus, the Court must determine whether summary judgment on the issue of damages in this action is appropriate. The parties disagree about the reasonableness of Nissan's legal expenses, and present dueling expert reports to support their respective positions. Schrader's expert, Mark Patterson, states that Nissan incurred unreasonable legal fees, citing: (1) Nissan's hiring of its own counsel rather than joining one or more of the other defendants in hiring a single law firm; (2) Nissan's retention of two firms for the litigation; and (3) Nissan missing opportunities to save legal fees by not being more aggressive in seeking dismissal of all patent claims in the MHL Tek Litigation. Schrader argues that these facts render Nissan's fees unreasonable and also constitute failure to mitigate damages.

Viewing the evidence in the light most favorable to Schrader, a jury could find that Nissan's legal strategy created expenses that were duplicative, unnecessary, or excessive. As the Tennessee Supreme Court has held, "the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and the experience of the trier of facts," and "the reasonableness of the fee must depend upon the particular circumstances of the individual case." Wright, 337 S.W.3d at 180–81 (citations omitted). The Court concludes that genuine issues of material fact as to the reasonableness of Nissan's legal expenses must be resolved by a jury.

For these reasons, the Court concludes that Schrader's motion for summary judgment should be denied and that Nissan's motion for summary judgment should be granted as to liability for indemnification, but denied as to damages. The amount of damages owed to Nissan for Schrader's breach of its contractual obligation to defend and indemnify it in the MHL Tek litigation will be determined by a jury.

An appropriate Order is filed herewith.

ENTERED this the 23rd day of October, 2014.

WILLIAM J. HAYNES, JR.
United States District Judge